FILED

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

2013 SEP -6 P 12: 59

DISTRICT COURT
OF RHODE ISLAND

--------------------------------------------------------------

JEFFREY C. BLOCK, MICHAEL G. LANGE and :
PETER A. PEASE

                       :

         Plaintiffs,     :

      vs.               :    C.A. No.

                       :

GLEN DEVALERIO and
THOMAS DEPETRILLO,      :    CA 13- 620

                       :

        Defendants.    :

--------------------------------------------------------------

## VERIFIED COMPLAINT

1.     Plaintiffs Jeffrey C. Block, Michael G. Lange, and Peter A. Pease (collectively

"Plaintiffs) are members of a closely held Rhode Island Limited Liability Company:

Cable Assembly, LLC ("Cable" or the "LLC"). There are 7 Members of Cable.

Plaintiffs are each former law partners with Defendant Glen DeValerio, who is an

attorney and also a Member of the LLC.

2.     On December 1, 2002, each of the 7 Members of Cable entered into an Operating

Agreement (the "Agreement") which governs their relationship. (A copy is annexed

hereto as Exhibit A.) In particular, paragraph 6.04 of the Agreement provides that "[t]he

compensation of each Member *employed* by the LLC shall be determined by the Consent

of the Members. *No payment shall be made by the LLC to any Manager or Member for*

*such Managers or Member's services as a Manager or Member, except as provided in*

*this Agreement*." (Emphasis added). Paragraph 6.05 provides that "Except as provided

in <u>Section 6.04,</u> *with the **Super** Consent of the Members in each case*, the LLC may

engage in business with, or enter into one or more agreements, leases, contracts or other arrangements for the furnishing to or by [Cable] of goods, services or space with any Manager, Member or Affiliate thereof, and may pay compensation in connection with such business, goods, services or space, provided in each case the amounts payable thereunder are reasonable compared to those that would be payable to unaffiliated persons under similar agreements." (Emphasis added.)

3.      Exhibit A to the Agreement, entitled "Definitions," provides that Super Consent is defined to mean "the *written* consent or approval of more than 85% in interest . . ." (Emphasis added).

4.      On March 12, 2013, Defendants DeValerio and Thomas DePetrillo ("DePetrillo"), the two Managing Members of Cable, neither of whom are employed by Cable, circulated a proposal pursuant to which DeValerio and DePetrillo requested that the Members approve the payment of $240,000 to them for retroactive compensation for serving as Managing Members, and that they each be paid $2,500 per month going forward (the "Compensation Proposal")(a copy is annexed hereto as Exhibit B). A vote of the members was taken and Plaintiffs, who each hold 10% voting interest or 30% in total, *voted against* the Compensation Proposal. DePetrillo (40% voting interest), DeValerio (10%), and DeValerio's two current law partners, non-party Norman Berman (10%) and non-party Kathleen Donovan-Maher (10%), voted in favor or the Compensation Proposal.

5.      Notwithstanding that the Compensation Proposal did not receive Super Consent (85%) approval, DeValerio and DePetrillo declared that "we fully intend to implement the proposal as passed by 70% of the members." They took this position even though

2

Plaintiffs pointed out in writing that, under the Agreement, since the Compensation Proposal did not receive 85% approval, it could not be implemented.

6.    In 2012, Cable had net earnings of $104,093. In 2011, Cable lost $181,885 and in 2010, it earned $456,946. Cash on hand at the end of 2012 was $329,080. Under the Compensation Proposal, DeValerio and DePetrillo will take most of the cash on hand for themselves for the retroactive $240,000 payment and, assuming Cable continues to earn the same amounts as 2012, will take 60% of the available earnings for themselves prior to any potential Member distributions.

7.    DeValerio's and DePetrillo's decision to appropriate almost a quarter million dollars for themselves, plus $30,000 each per year on a going forward basis, is a clear violation of the Agreement and a separate breach of their fiduciary duties of loyalty and good faith/fair dealing. Section 6.04 prohibits payment to them for serving as Managing Members. They are not and have never been employed by Cable. Entering into any employment (or other) economic relationship with Cable would require the written consent from 85% of the Members, which has not been given. *It is simply a theft of corporate assets and an attempt to line their own pockets at the expense of their fellow Members. By taking substantially all of Cable's cash for themselves, they are potentially also jeopardizing the company's solvency.*

8.    Additionally, DeValerio and DePetrillo have engaged in self-dealing by taking for themselves $240,000 for "past services" and $30,000 each per year, which amounts to a substantial percentage of nearly all of Cable's 2012 cash on hand. Instead of declaring and paying Member distributions, as has been done over the life of Cable, DeValerio and

DePetrillo are appropriating nearly all of Cable's available cash and preventing the normal distribution of payments to the other Members.

9.      It also appears that DePetrillo has engaged in improper and unapproved related party transactions for years, in violation of the Agreement and with the knowledge and complicity (or neglect) of DeValerio in breach of his fiduciary duties.  Cable rents office space from DePetrillo in Warwick, Rhode Island but has never requested or received written Super Consent of the Members.  In addition, DePetrillo installed his business associate, Nicholas Moceri ("Moceri"), as Cable's CEO at an annual salary of $300,000 per year.  Moceri manages other of DePetrillo's businesses and receives 10% of all profits DePetrillo earns on those businesses.  He does not devote his full attention to Cable.

10.      Moceri is clearly an Affiliate of DePetrillo under the Agreement.  The Members of Cable have not approved by written Super Consent of Moceri's hiring as CEO of Cable, or his exorbitant compensation for part time work.  Moreover, Moceri has breached his own fiduciary duties as an executive of Cable - to the company and to the other Members - by permitting and participating in the improper distributions, payments and the other misconduct alleged herein, in violation of the Operating Agreement; and by jeopardizing the cash position and solvency of Cable.

11.      As a result of Defendants' wrongful conduct and breaches of the Agreement and their fiduciary duties of loyalty and good faith, Plaintiffs request the Court to order that: (a) payments being made pursuant to the Compensation Proposal are prohibited, and, if any have already been made, that they be re-paid to Cable with appropriate interest; (b) DePetrillo be forced to account for his improper related party transactions and that all

4

money paid to him be returned to Cable with interest; (c) DeValerio and DePetrillo be enjoined from using Cable funds and from hiring Cable's counsel, including Patrick Gasbarro, to defend themselves in this lawsuit; and (d) DeValerio and DePetrillo be removed as Managers of Cable, Moceri be removed as CEO, an independent audit be performed, and a constructive trust be imposed and a trustee be appointed to manage and operate the affairs of the Company going forward.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, diversity jurisdiction, and the amount in controversy exceeds $75,000.

13.     Venue is proper in this Court as the Agreement provides that the laws of the State of Rhode Island govern and courts within Rhode Island have exclusive jurisdiction over disputes regarding the Agreement.

## THE PARTIES

14.     Plaintiff Jeffrey C. Block ("Block") is a resident of Massachusetts and was partners with DeValerio from 1997 to 2011 in Berman DeValerio.  Block left Berman DeValerio in 2011.  Block signed the Agreement in December 2002 and has a 10% voting interest.

15.     Plaintiff Michael G. Lange ("Lange") is a resident of Massachusetts and was partners with DeValerio from 2001 to 2006 in Berman DeValerio.  Lange left Berman DeValerio in 2006.  Lange signed the Agreement in December 2002 and has a 10% voting interest.

16.     Plaintiff Peter A. Pease ("Pease") is a resident of Massachusetts and was partners with DeValerio from 1982 to 2011 in the Boston based law firm Berman, DeValerio &

Pease LLP ("Berman DeValerio"). Pease left Berman DeValerio in 2011. Pease signed the Agreement in December 2002 and has a 10% voting interest.

17.     Defendant Glen DeValerio is a resident of Rhode Island. DeValerio, along with Pease and Norman Berman formed Berman DeValerio in 1982. Ironically, DeValerio concentrates his practice of law in representing investors who have been harmed by corporate misdeeds. DeValerio signed the Agreement in December 2002 and has a 10% voting interest.

18.     Defendant Thomas DePetrillo is a resident of Rhode Island. He has been friends with DeValerio for decades. In 2002, DePetrillo approached DeValerio about having DeValerio and his law partners invest in a struggling cable wire-harness manufacturer located in Rhode Island. DePetrillo signed the Agreement in December 2002 and has a 40% voting interest.

19.     Non-party Norman Berman ("Berman") is a resident of Massachusetts. Berman, along with DeValerio and Pease formed Berman, DeValerio in 1982. Berman signed the Agreement in December 2002 and has a 10% voting interest. Berman voted in favor of the retroactive expropriation of $240,000 - by DePetrillo and his law partner, DeValerio, and $30,000 each per year going forward.

20.     Non-party Kathleen Donovan-Maher ("Donovan-Maher") is a resident of Massachusetts. Donovan-Maher is a partner in Berman DeValerio. Donovan-Maher signed the Agreement in December 2002 and has a 10% voting interest. Donovan-Maher voted in favor of the retroactive expropriation of $240,000 by DePetrillo and her law partner, DeValerio, and $30,000 each per year going forward.

21.     Non-party Cable is a Rhode Island Limited Liability Company, with its offices

located at 250B Centerville Road, Warwick, Rhode Island.  Cable is a wire harness

assembly manufacturer.  In 2002, Plaintiffs, Defendants and non-parties Berman and

Donovan-Maher became the owners of Cable.

## SUBSTANTIVE ALLEGATIONS

### The Agreement

22.     Each of the Members of Cable entered into an Operating Agreement on December

1, 2002.  The Agreement "sets out fully [the] respective rights, obligations and duties

with respect to each other and the business, management and operations of the LLC."

23.     Paragraph 6.04 of the Agreement regulates the "Compensation of Managers and

Members."  It provides:

> The compensation of each Member *employed* by the LLC shall be determined
> by the Consent of the Members.  No payment shall be made by the LLC to
> any Manager or Member for such Managers or Member's services as a
> Manager or Member, except as provided in this Agreement.  Each Manager
> and Member shall be entitled to reimbursement from the LLC for all expenses
> incurred by such Manager and Member in managing and conducting the
> business affairs of the LLC.  [Emphasis added.]

24.     Paragraph 6.05 of the Agreement regulates "Contracts with Managers and

Members."  It provides:

> Except as provided in Section 6.04, with the **Super** Consent of the Members
> in each case, the LLC may engage in business with, or enter into one or more
> agreements, leases, contracts, or other arrangements for the furnishing to or by
> the LLC, of goods, services or space with any Manager, Member or Affiliate
> thereof, and may pay compensation in connection with such business, goods,
> services or space, provided in each case the amounts payable thereunder are
> reasonably comparable to those that would be payable to unaffiliated persons
> under similar agreements, and, if determined by **Super** Consent of the
> Members that such amounts are so comparable, such determination shall be
> conclusive absent manifest error.

25.     Exhibit A to the Agreement sets out the definitions of the terms in the Agreement, including "Super Consent."

26.     Super Consent means the written consent or approval of more than 85% in interest, based on Percentage Interest, of those Members entitled to participate in giving such **Super** Consent, and if more than one class or group of Members is so entitled, then more then 85% shall be required with respect to each such class or group."

27.     Exhibit A also defines "Affiliate."

> The term "Affiliate" "shall mean, with respect to any specified person or entity, (i) any person or entity that directly or indirectly controls, is controlled by, or is under common control with such specified person or entity; (ii) any person or entity that directly or indirectly controls 10 percent or more of the outstanding equity securities of the specified entity or of which the specified person or entity is directly or indirectly the owner of 10 percent or more of any class of equity securities; ( iii) any person or entity that is an officer of, director of, manager of, or trustee of or with respect to which the specified person or entity services in a similar capacity; or (iv) any person that is a member of the Immediate Family of the specified person."

28.     Paragraph 6.06 provides that "Members acting in their capacities as Members shall have a fiduciary obligation to each other and to the LLC."

**The Compensation Proposal**

29.     Prior to the Compensation Proposal being circulated to the Members, Cable apparently was in talks with a third-party with regard to a potential acquisition which fell through in late February, 2013.  Having lost the opportunity to sell Cable, DeValerio and DePetrillo then set about trying to figure out how they could extract money for themselves from Cable, in addition to the amounts DePetrillo had already been improperly taking for himself, and to pressure Plaintiffs to sell their Member interests to himself and DeValerio for less than their fair value.

8

30. Thus, a few weeks after the acquisition talks ended, in March 2012, DeValerio and DePetrillo sent a proposal to the Members requesting that they be compensated, *retroactively for more than a decade* as well as going forward, for service as Managers (the "Compensation Proposal Letter"). The Compensation Proposal Letter provided:

> It is hereby proposed that the Members of the company approve a plan to compensate two Members of the company, Thomas DePetrillo and Glen DeValerio, for services rendered over the past 10 years and during the time they have served as Managers of the company. The proposal is that Tom and Glen be paid a total of $240,000 for their work from inception to the present. The proposal also is that on a going forward basis Tom and Glen be paid $2,500 each per month for their continued services.

31. Prior to sending the Compensation Proposal, DeValerio and DePetrillo consulted with corporate counsel, Pat Gasbarro. In the original proposal, DeValerio and DePetrillo sought to justify their request in accordance with paragraph 4.01 of the Agreement, presumably considering liquidation as a means for extracting cash for themselves. Paragraph 4.01 regulates "Distribution of Distributable Cash and Net Proceeds Upon Liquidation." It provides, in relevant part, that "[d]istributable cash . . . shall be distributed to the Members in accordance with their Percentage Interests ...." Gasbarro advised DeValerio and DePetrillo that paragraph 6.04 of the Agreement regulated the LLC paying Members for their services.

32. The Letter concluded with the following misleading statement: "According to Section 6.04 of the Operating Agreement the payment of compensation is subject to the consent of more than *50% in interest*, based on Member Percentage Interests, of the Members, to carry the proposal. Please also note that your vote is due by April 5, 2013."

33. Contrary to the misrepresentation set forth in the Compensation Proposal Letter, paragraph 6.04 expressly provides that "**no payment**" may be made to any Member for

service as Manager. Paragraph 6.05 provides that any payments to Members must be approved by Super Consent - or 85% - of the Members.

34.     Thirty percent of the Members by voting percentage voted against the Compensation Proposal. Notwithstanding the Agreement's clear and unambiguous provisions, DeValerio and DePetrillo decided that they would take the money anyway, regardless of the vote and regardless of the Agreement. As DeValerio wrote in a memo to the Members on April 16, 2013 (the "DeValerio Memo")(a copy is annexed hereto as Exhibit D):

> We have given careful consideration both prior to making the proposal and after receiving the various objections noted above, concerning both the legal and financial propriety of proceeding with this proposal. We believe that we are on solid grounds and are taking no steps that will in any way jeopardize the continued performance of the business. Therefore, we fully intend to implement the proposal as passed by 70% of the members.

35.     DeValerio was expressly informed by Plaintiffs in writing that the Agreement required 85% approval for the Compensation Proposal to pass and be implemented. DeValerio was well aware of the provisions of the Agreement and knew the Member vote did not provide 85% approval. Nonetheless, in callous, wanton and intentional disregard of the Agreement, DeValerio and DePetrillo declared they were simply taking the money.

36.     Tellingly, DeValerio never addressed or responded to the concerns expressed by the Plaintiffs that the Compensation Proposal was in violation of the Agreement.

37.     DeValerio and DePetrillo's conduct is a clear and unambiguous violation of the Agreement. DeValerio, an attorney who purports to represent investors harmed by the misdeeds of corporate executives, knows full well his conduct is in violation of the Agreement and a violation of his fiduciary duties of loyalty, good faith and fair dealing.

38.     DeValerio and DePetrillo are simply misappropriating corporate assets for themselves. They are acting in breach of their fiduciary duties including that of loyalty to the best interests of the Cable and the other Members. They may not misappropriate money from Cable and, as fiduciaries, they are obligated to comply with the Agreement and the vote of the Members. By their conduct, DeValerio and DePetrillo have clearly shown that they do not intend to be bound by the Agreement, by a valid vote of the Members, or by their fiduciary duties of loyalty, care and good faith.

39.     DeValerio and DePetrillo have acted to benefit themselves at the expense of Plaintiffs and Cable. Their decision to pay themselves $120,000 each for "past services" and $30,000 per year on a going forward basis is clearly self-dealing, a transaction with parties in interest designed to benefit themselves to the detriment of Cable and Plaintiffs. Cable has a long history of not paying any Manager or Member for services rendered to Cable and has a long history of paying modest dividends to its Members from its earnings. DeValerio and DePetrillo have taken all distributable profits for the year 2012 and nearly all available cash for themselves.

40.     As CEO, Moceri has breached his own fiduciary duties as a company executive in permitting these improper actions and payments to occur.

**DePetrillo Has Been Improperly Taking Money for Years**

41.     According to financial documents turned over to Plaintiffs by Cable, one of its members, believed to be DePetrillo, has had his health insurance paid for by Cable in 2012 in the amount of almost $18,000. This "payment" to DePetrillo never received the written Super Consent or approval by the Members. It is believed that Cable has been improperly paying DePetrillo's health insurance for years.

42.     In 2010, 2011 and 2012 Cable paid to "DePetrillo Warwick Realty" $30,000 per year in lease payments. This lease agreement has never received the written Super Consent of the Members. Moreover, the lease payments are excessive given that there are only one or two administrative employees in Warwick and their space requirements are minimal. The lease and payments violate Section 6.04 as the arrangement is *not* reasonably comparable to what would be paid to unaffiliated persons.

43.     In 2012, Cable paid to Providence Capital, DePetrillo's company, $53,994; in 2011 it paid $51,007, and in 2010 it paid $47,657. These payments to DePetrillo's company have never received the written Super Consent or approval of the Members.

44.     Moceri is Cable's CEO. Moceri is an employee and business partner of Providence Capital, DePetrillo's company. For 2012, the entire salary for all Cable employees was $649,142. Of this amount, it is believed that at least $300,000 was paid to Moceri as CEO. Thus, roughly one-half of all salaries paid by Cable are paid to DePetrillo's business partner, Moceri.

45.     Moceri does not work full-time for Cable. Moceri also manages other companies owned by Providence Capital. Moceri receives 10% of all earnings of Providence Capital. Moceri is clearly an Affiliate of DePetrillo. His salary and role as CEO have never received the written Super Consent of the Members as required by the Agreement.

46.     In short, in violation of paragraph 6.05 of the Agreement, DePetrillo has been taking significant sums from Cable for years without proper Member approval. Moceri has also breached his fiduciary obligations as CEO in permitting these payments to be made.

**Cable's Financial Condition Does Not Support the Payments and**
**The Majority are Freezing out the Minority Members**

47.     In 2012, Cable had net earnings of $104,093. In 2011, Cable lost $181,885 and in

2010 it earned $456,946. Cash on hand at the end of 2012 was $329,080.

48.     Under the Compensation Plan, DeValerio and DePetrillo are taking nearly *all* of

Cable's cash on hand as well as all of Cable's likely earnings for the foreseeable future.

49.     In addition, in his Memo, DeValerio admits that he and DePetrillo are only

providing DeValerio's *current* law firm partners with pertinent material information

regarding Cable and its operations, while excluding Plaintiffs. The memo states:

> All Berman DeValerio *partner members* received regular reports on the current
> status of the company finances and business performances including, but not
> limited to, weekly, monthly and quarterly sales and bookings reports, profitability
> and expense reports, and regular meetings with both Mr. DeValerio and Mr.
> DePetrillo to discuss the current information on the performance and prospects for
> the company. (Emphasis added)

50.     Plaintiffs are no longer "Berman DeValerio partner members" - they are former

partner members. Thus, DeValerio and DePetrillo are selectively choosing which

Members will share material information and are intentionally excluding Plaintiffs from

receiving this information. None of the Plaintiffs received any of the information

DeValerio identified in his Memo.

**COUNT I**
**VIOLATION OF OPERATING AGREEMENT**

51.     Plaintiffs repeat and re-allege each of the foregoing paragraphs as if fully set forth

herein.

52.     The Compensation Plan did not receive Super Consent of the Members as it did

not receive the approval of more than 85% of the Members. DeValerio and DePetrillo's

13

written statement that they will take the money regardless of the Agreement and Member vote is in violation of the Agreement.

53.     Any and all payments to DeValerio and DePetrillo should be permanently enjoined and, to the extent they have already taken any money, they should be ordered to immediately repay it to Cable with appropriate interest.

54.     All money paid by Cable to DePetrillo for health benefits, rent payments, Moceri's salary and any other payments for which DePetrillo did not receive Super Consent of the Members in writing should be repaid to Cable, with appropriate interest.

55.     DePetrillo, Moceri and any company that either owns or is an Affiliate of theirs should be permanently enjoined from receiving any money from Cable absent the Super Consent of the Members in writing.

**COUNT II**
**BREACH OF DUTY OF LOYALTY**

56.     Plaintiffs repeat and re-allege each of the foregoing paragraphs as if fully set forth herein.

57.     As Managers and Members of the LLC, DeValerio and DePetrillo owe each Member and the LLC a duty of utmost care and loyalty.  They are obligated to act in the best interests of the LLC and each of its Members and cannot engage in self-dealing and self-motivated transactions.

58.     Here, in breach of their duties including that of loyalty, DeValerio and DePetrillo intentionally ignored the Agreement and the Member vote and are taking $240,000 and another $60,000 per year for themselves pursuant to the Compensation Proposal. Defendants are acting in their own self-interest in taking corporate money at the expense of the other Members and to the detriment of the Company.

59.     By proposing and voting for the Compensation Proposal, DeValerio and DePetrillo have engaged in self-dealing and in a self-interested transaction whereby they are taking all of Cable's 2012 earnings and nearly all of Cable's cash on hand. The Compensation Proposal was not approved by the required super-majority of the Members and is a breach of duty of loyalty by DeValerio and DePetrillo.

60.     DePetrillo has been engaged in self-dealing with Cable for years, having the company pay his health insurance, excessive rent for office space from his real estate company, pay other fees to another of his companies, and pay his business colleague an exorbitant salary, which saves him paying Moceri from other business interests.

61.     DeValerio has either knowingly permitted these unauthorized payments to be made or breached his fiduciary duties as Manager in permitting them to occur.

62.     DePetrillo has breached his fiduciary duties including that of loyalty and care to Cable and each of its Members by engaging in self-dealing transactions without the necessary approval of the Members.

## COUNT III
## BREACH OF FIDUCIARY DUTY OF GOOD FAITH AND FAIR DEALING

63.     Plaintiffs repeat and re-allege each of the foregoing paragraphs as if fully set forth herein.

64.     Defendants owe each Member and the LLC the duties of good faith and fair dealing. By taking money for themselves, and engaging in improper self-interested transactions, each Defendant has breached his fiduciary duty to Plaintiffs. The Compensation Proposal was not approved by the required super-majority of the Members.

65.     In addition, Defendants have and continue to attempt to freeze-out Plaintiffs by improperly sharing material corporate information regarding Cable with DeValerio's *current* law partners while failing to provide Plaintiffs with the same information.

66.     Defendants are breaching their duties of good faith and fair dealing by selectively sharing material corporate information but intentionally excluding Plaintiffs from receiving this information.

WHEREFORE, Plaintiffs pray for judgment as follows:

1.      Declaring that the Compensation Proposal is in violation of the Agreement and permanently enjoining any and all payments under the Compensation Plan;

2.      Declaring that the Compensation Proposal is a self-interested transaction for DeValerio and DePetrillo which was not approved by the required super-majority of the Members and a breach of Defendants' duties of loyalty, good faith and fair dealing;

3.      Ordering Defendants to re-pay money taken from Cable pursuant to the Compensation Plan, with interest;

4.      Declaring that DePetrillo has taken money from Cable without the written Super Consent of the Members including, but not limited to, health insurance coverage, rent payments, salary to Moceri and other payments to Providence Capital, and ordering the DePetrillo re-pay all such sums with interest;

5.      Declaring that DeValerio and DePetrillo have breached their fiduciary duties of loyalty, good faith and fair dealing to Cable and Plaintiffs, by ignoring the

16

Agreement and the Member vote and engaging in self-dealing transactions to benefit themselves personally at the expense of Cable and Plaintiffs;

6.    Declaring that DePetrillo has breached his fiduciary duties of loyalty, good faith and fair dealing to Cable and Plaintiffs, by ignoring the Agreement and engaging in self-dealing transactions to benefit himself personally at the expense of Cable and Plaintiffs;

7.    Declaring that DeValerio and DePetrillo have breached their fiduciary duties of good faith and fair dealing by engaging in a pattern of conduct intended to deprive Plaintiffs of material information regarding Cable, yet sharing such information with other Cable Members, and attempting to freeze-out Plaintiffs;

8.    Ordering that DeValerio and DePetrillo be removed as Managers of Cable and be permanently enjoined from being re-instated as Managers;

9.    Ordering that Moceri be enjoined from acting as CEO of Cable and be permanently enjoined from being re-instated as CEO;

10.    Ordering that a constructive trust be imposed on the Company and a Trustee be appointed to manage the Company, that an independent audit be performed, and that a trustee be appointed to manage and operate the affairs of the company going forward;

11.    Ordering that Defendants not be permitted to use corporate assets or company counsel, including Patrick Gasbarro, to defend this action;

12.    Awarding Plaintiffs all costs and fees in connection with this action; and

13.    All other relief that the Court deems just and proper.

Dated: September 5, 2013

Respectfully submitted,

Jeffrey C. Block, Esq.   Pro Se

Michael G. Lange, Esq.   Pro Se

Peter A. Pease, Esq.   Pro Se

**Contact Information for Pro Se Parties:**

**Jeffrey C. Block**

Block & Leviton, LLP

155 Federal Street, Suite 1303

Boston, MA 02110

Ph: (617) 398-5600

Fax: (617) 507-6020

Email: jeff@blockesq.com

**Michael G. Lange**

Law Office of Michael G. Lange

15 Fox Lane

Newton, MA 02459

Ph: (617) 795-0854

**Peter A. Pease**

Law Offices of Peter A. Pease

40 Huckleberry Hill Road

Lincoln, MA 017773

Ph: (781) 710-3941

Email: peter@pease-law.com

## VERIFICATION

I, Jeffrey C. Block, verify and declare that I have reviewed the Verified Shareholder Compliant in this action captioned Jeffrey C. Block, et. al. v. Glen DeValerio, et. anno.  (the "Complaint").  The allegations contained within the Complaint are true and correct to the best of my knowledge, information and belief.  I have also authorized the filing of this Compliant.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: September 4, 2012

_____
Jeffrey C. Block

## VERIFICATION

I, Michael G. Lange, verify and declare that I have reviewed the Verified Compliant in this action captioned Jeffrey C. Block, et al. v. Glen DeValerio, et al. (the "Complaint"). The allegations contained within the Complaint are true and correct to the best of my knowledge, information and belief. I have also authorized the filing of this Compliant.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: September 3, 2013

_____
Michael G. Lange

## VERIFICATION

I, Peter A. Pease, verify and declare that I have reviewed the Verified Shareholder Complaint in this action captioned Jeffrey C. Block, et al. v. Glen DeValerio, et al. (the "Complaint"). The allegations contained within the Complaint are true and correct to the best of my knowledge, information and belief. I have also authorized the filing of this Complaint.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: September 3, 2013

_____
Peter A. Pease